UNITED STATES DISTRICT COURT                    (Jury Demanded)

FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------X

TULINE JENKINS and ADELEKE OMOLE, individually, and

as ADMINISTRATORS OF THE ESTATE OF ADEDJI OMOLE

aka ADEDEJI OMOLE and ESTATE OF ADEDJI OMOLEM aka

ADEDEJI OMOLE,

                                        Plaintiffs,

VS                              CV 18 - 1145

                                        INDEX NO,_____

                                                BLOCK, J.

THE CITY OF NEW YORK, THE DEPARTMENT OF        COMPLAINT

                                        BULSARA, M.J.

CORRECTIONS OF THE CITY OF NEW YORK,  THE CITY

OF  PHILADELPHIA and  THE PHILADELPHIA DEPARTMENT

OF PRISONS



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 2 2 2018 ★
BROOKLYN OFFICE

1

<u>THE PARTIES</u>

1. Plaintiff , TULLINE JENKINS and ADELEKE OMOLE as ADMINISTRATORS OF THE ESTATE OF ADEDEJE OMALE (hereinafter referred to as "ADMINISTRATORS OF THE ESTATE") are the duly appointed administrators for the ESTATE OF ADEDJI OMOLE by the Surrogate Court of Kings County  ( see administration papers exhibit "A" .

2. Plaintiff  THE  ESTATE OF ADEDJI OMOLE aka ADEDEJE OMOLE is the Estate of the deceased ADEDJI OMOLE aka ADEDEJE OMOLE ( Hereinafter referred to as "THE ESTATE OF DEJI "( see administration papers exhibit "A" attached hereto) with its address at 18 Roosevelt Place, Brooklyn, NY 11233 (hereinafter the deceased himself shall be referred to as "DEJI" ) (Collectively, ADMINISTRATORS OF THE ESTATE and THE ESTATE OF DEJI  are  referred to hereinafter as "THE ESTATE")

3. On January 16, 2018 the Kings County Surrogates Court issued Limited Letters of Administration for the sole purpose of commencing and prosecuting a cause of action on behalf of the Estate.  ( see Letters of Administration exhibit  " A  " attached}

4. Plaintiff Tulline Jenkins , the mother of deceased Adedeje Omole is an individual with her residence at 18 Roosevelt place, Brooklyn, NY 11233  (Hereinafter "TULLINE")

5. Plaintiff Adeleke Omole, the father of deceased Adedeje Omole is an individual with his residence at    11341 Market St., Fulton , Maryland 20759 (Hereinafter "ADELEKE")

6. Defendant  THE CITY OF NEW YORK is  a municipal corporation with its address at Corporation Counsel, City Of New York 100 Church St., New York, NY 10007 (hereinafter referred to as "NYC"

7. Defendant, THE DEPARTMENT OF CORRECTIONS OF THE CITY OF NEW YORK,  is a Department of the City of New York operating in  a correctional facility at Rikers Island, New York 11370   (hereinafter "RIKERS")

8. Defendant, THE CITY OF PHILADELPHIA,    is a Political Subdivision of the Commonwealth of Pennsylvania with offices at City Hall, Philadelphia, Pa 19107 (Hereinafter referred to herein as "PHILLY")

9. Defendant PHILADELPHIA DEPARTMENT OF PRISONS is a political subdivision of  the Commonwealth  of Pennsylvania  (hereinafter referred to as  "PHILLY PRISON" ) with its address at 7901 State Rd., Philadelphia, Pa 19136

JURISDICTION AND VENUE

–

10. This Court has FEDERAL QUESTION subject matter jurisdiction under The Americans With Disabilities Act  42 USC 12131 – 12160 et seq; 29 USC 794a

11. Venue is Proper under 28 USC 1391  as DEJI, a resident of the City and State of New York died in the care and custody of Defendants "NYC" and "RIKERS" during or after transport in a vehicle transferring "DEJI" from his incarceration in "PHILLY PRISON"  to "RIKERS" . In addition , plaintiff "TULLINE" is a New York resident.

12. Under 28 USC 1367 , this Court has Supplemental Jurisdiction to hear causes of action in Negligence, Pain and Suffering  and for loss of Consortium, as these claims are so related to claims in the action , they form part of the same case and controversy.

13. Condition precedents has been met- NYC 90 day notice Condition precedents has been met- (see Notice Of Claim , exhibit " B " attached hereto) receipt of which was acknowledged by NYC.(see acknowledgment of claim exhibit " C " attached) . "The Estates" claim against the NYC and RIKERS  was denied.  ( see denial of claim- exhibit " D " attached).

14. With respect To Pennsylvania defendants (PHILLY PRISON and PHILLY, Plaintiff alleges

a reasonable excuse for delay in that *inter alia,* letters of administration granting authority to

commence an action on behalf of the estate were first granted January 17, 2018 (see Letters

of Administration exhibit " A " attached)


## BACKGROUND OF THE CASE

15. Adedje Omole ( DEJI) was a severely disabled incarcerated individual who weighed as

much as 600 pounds from time to time. DEJI had trouble breathing due to asthma and

rheumatism and could not lay down. ( see Methodist Hospital discharge exhibit " E "

attached.)

16. Although DEJI was in and out of prison during his short life, DEJI earned a high School

GED diploma (see exhibit " F " attached} and a Culinary Degree (see exhibit "  G "

attached)

16a) DEJI had plans to start a restaurant business with his Dad (ADELEKE) after DEJI served

his prison time. DEJI had other options as well.

17. Section 12132 of the Americans With Disabilities Act states, *inter alia*:

"……..Subject to the provisions of this subchapter, no qualified individual

with disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any

such public entity........... the State possesses a duty to render reasonable

and adequate medical care to its inmates without undue delay .....'

18. While incarcerated in "PHILLY" DEJI sought medical intervention for his breathing, his

medications, and his sleeping arrangements.

19. Decisions made by PHILLY PRISON with respect to not only the treatment of his condition,

but also whether and how DEJI would ambulate within the facility and between facilities by

reason of that condition, became matters of medical care and treatment, rather than simple

classification and assignment .

20. Once Transferred to RIKERS crew on February 24, 2016, decisions made by RIKERS with

respect to not only the treatment of his condition, but also whether and how he would

ambulate within the facility and between facilities by reason of that condition, became

matters of medical care and treatment, rather than simple classification and assignment

21. DEJI was neglected and improperly treated in matters of medical care and treatment. DEJI

was denied adequate means to timely complain about his treatment in transit. This failure by

PHILLY PRISON resulted in pain and suffering to DEJI and distress knowing of his eminent

death and finally his death.

22. DEJI was neglected and improperly treated in matters of medical care and treatment. DEJI was denied adequate means to timely complain about his treatment in transit. This failure by RIKERS resulted in pain and suffering to DEJI and distress knowing of his eminent death and finally his death.

22a. DEJI was not supplied by PHILLY PRISON or RIKERS with the medication he needed.

## FACTS COMMON TO ALL CAUSES OF ACTION

23. DEJI (Adedji Omole ) was at all times before his death a qualified individual with a disability under the Americans with Disabilities Act

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

(Pub. L. 101–336, title II, §201, July 26, 1990, 104 Stat. 337.)

24.  All defendants named herein are "public entities" within the definitions of the Americans
with Disabilities Act.

25.  DEJI was 33 years old at the time of his death. A copy of his birth certificate is attached
hereto as exhibit " H ". A copy of his death certificate is attached hereto as exhibit " I  ".

26.  DEJI had completed serving a one year sentence at "PHILLY PRISON" for identify fraud in
Pennsylvania which violated his parole agreement for his release from a  sentence in New
York   to be served at "RIKERS".

27.  DEJI was a disabled person, because at time of death his  body weight exceeded 445 pounds.
( see "autopsy"  exhibit "J  " attached) he had difficulty walking.

28.  DEJI was a disabled person because DEJI needed an inhaler to breathe ( see   Hospital
Discharge  exhibit " E " attached)

29. DEJI was a disabled person because DEJI had been diagnosed with Asthma, Polymyositis, Rheumatism , Hypertension and had problems breathing ( see Downstate Hospital Report exhibit " K " attached)

30. DEJI was a disabled person because DEJI had problems fitting into chairs, into seats, into vehicles and lying down flat. ( see NY Methodist Hospital Report exhibit "E " attached)

31. DEJI was repeatedly denied medical care by PHILLY PRISON, in that repeated requests to see a doctor were not sufficiently or adequately or timely met.(i.e. needed medication and treatment for his asthma, hypertension and/or rheumatism).

<u>FACTS RELATING TO ALL CAUSES OF ACTION REGARDING THE</u>

<u>TRANSPORTATION BETWEEN PRISONS</u>

32. On February 24, 2016 , "RIKERS" sent a vehicle with guards to "PHILLY PRISON" to pick up DEJI for the purpose of bringing him to Rikers Island in New York to serve the remainder of his sentence.

33. Rikers had adequate notice of DEJI's disabilities because RIKERS had incarcerated DEJI in its facilities before his release on parole. Yet no adequate provisions were made for the safe transfer of DEJI to New York.

34. No adequate instructions were given by "PHILLY PRISON" to the "RIKERS" crew that related to "DEJI's disability or his need for medical attention, special transportation requirements or required medications for the journey.

35. DEJIs inhaler was not provided to him to by "PHILLY PRISON" or "RIKERS" guards.

36. DEJI was released by "PHILLY PRISON" to an inadequate vehicle for transport by "RIKERS"

37. DEJI was driven without being given adequate transportation by "RIKERS"

38. DEJI was abused by the "Philly Guards " who released him to the "RIKERS" Guards who also abused him. DEJI was abused by not being given requested medication and/or required

medication and/or timely medication, opportunity to complain or adequate and safe means of accommodation and transportation

39. DEJIS breathing machine was inoperable without electric socket. No provision was made for operation of DEJI s breathing machine for the journey.

40. DEJI suffered and was in pain and distress in the vehicle during transport.

41. DEJI  was not otherwise provided with what he needed to survive the transfer between prisons.

42. The decision not to provide these necessities was intentionally and independently made by "RIKERS" and "PHILLY PRISON".

43. DEJI was brought to New Jersey St Michaels Medical Center in Newark, New Jersey February 24, 2016 which was the same day he was picked up from PHILLY PRISON by RIKERS.

44. On information and belief, DEJI was brought to St. Michaels Dead on Arrival. ( see death certificate exhibit " I  " attached.

45. A copy of a certified autopsy dated May 17, 2016 which was performed in New Jersey  is attached hereto ( see exhibit " J  " attached).

46. The Cities of "PHILLY" and "NYC" are vicariously liable for the acts of its employees under these circumstances. The misfeasance and/or nonfeasance and mistreatment of DEJI by PHILLY PRISON and DEJI are also the responsibility of  PHILLY and NYC.

<u>AS AND FOR A FIRST CAUSE OF ACTION FOR WRONGFUL DEATH UNDER THE AMERICANS WITH DISABILITIES ACT AND FEDERAL LAW AGAINST ALL DEFENDANTS</u>

47.  Plaintiff, ESTATE reaffirms and realleges allegations contained in paragraphs numbered 1 through 46 as if fully set forth herein.

48. "The acts of  "PHILLY PRISON and RIKERS"  were discriminatory against "DEJI" as a qualified disabled person and violated his civil rights

49. DEJI was Denied  Medical Care, and was denied  the benefits of the services and programs by reason of his disabilities  by PHILLY PRISON  and  RIKERS.

50. Adequate facilities for transport were not provided by PHILLY PRISON and RIKERS.

51. No adequate means to complain was available to DEJI in preparation for or once embarked on the journey from PHILLY PRISON to Rikers Island by Any of the DEFENDANTS

52. All discretionary determinations made by any of the defendants failed to fulfill the responsibilities for the safety, security and control of the respective corrections facilities and were not compliant with governing statutes and regulations including, but not limited to providing an adequate complaint procedure for transport issues as well as providing reasonable accommodations to transport disabled prisoner DEJI.

53. By reason of the foregoing DEJI helplessly died while in transport arranged, supplied and determined by DEFENDANTS .

54. As a result of the aforementioned , Plaintiff ESTATE demands compensation for the Wrongful Death of DEJI for loss of prospective future lifetime earnings in the amount of $2,500,000.00

WHEREFORE . plaintiff "ESTATE " demands judgment in the amount of $2,500,000.00 for violations of the Americans with Disabilities Act against ALL DEFENDANTS.


## AS AND FOR A SECOND  CAUSE OF ACTION FOR WRONGFUL DEATH FOR NEGLIGENCE AGAINST ALL DEFENDANTS


55. Plaintiff ESTATE reaffirms and realleges allegations contained in paragraphs numbered

  1 – 53 as if fully set forth herein.


56. Both RIKERS and PHILLY PRISON failed to follow their own inmate grievance program

  guidelines in addition to committing the other negligent acts and omissions described above.


57. The  Acts and Omissions  of "PHILLY PRISON " and RIKERS" , "NYS" and "PHILLY"

  described above was Negligence on the part of all defendants  that resulted in the death of

  DEJI.

58. But for these Negligent Acts and Omissions of ALL DEFENDANTS, DEJI would be alive

  today.

WHEREFORE . plaintiff "ESTATE " demands judgment in the amount of $2,500,000.00 for Negligence against ALL DEFENDANTS.

## AS AND FOR A THIRD  CAUSE OF ACTION FOR PAIN AND SUFFERING  AGAINST ALL DEFENDANTS

59. Plaintiff ESTATE reaffirms and realleges allegations contained in paragraphs numbered

1 – 53 as if fully set forth herein.

60. In addition to violations of The Americans with Disabilities Act, the Acts and Omissions and Negligence  described herein also constitute Cruel and Unusual Punishment under the 8th Amendment.

61. On information and belief, DEJI experienced pain and suffered up to and during the transport on February 24, 2016 and experienced cruel treatment and disregard for his cries and complaints.

62. On information and belief DEJI knew during transport he was about to die and experienced

grave sadness and suffering up to his moment of death


WHEREFORE . plaintiff "ESTATE " demands judgment in the amount of $4,000,000.00

for Pain and Suffering  against  All Defendants.




## AS AND FOR A FOURTH  CAUSE OF ACTION FOR LOSS OF CONSORTIUM

## AGAINST ALL DEFENDANTS




63. Plaintiffs TULLINE and  ADELEKE in their individual capacity as Mother and Father of

DEJI, the deceased, reaffirm   and reallege  allegations contained in paragraphs numbered

1 – 58 as if fully set forth herein.

64. Plaintiffs TULLINE and ADELEKE are now forever deprived of any contact, enjoyment or companionship with their son DEJI.

65. The loss of consortium with their son was caused by the malfeasance, misfeasance, negligence and the failure to follow the laws designed to protect prisoners who are reliant on the control and custody of the institutions of the Government. ALL DEFENDANTS failed the plaintiffs.

WHEREFORE . plaintiffs "TULLINE" and "ADELEKE " in their individual capacity demand judgment in the amount of $1,000,000.00 for loss of consortium of their son against ALL DEFENDANTS.

<u>CONCLUSION</u>

WHEREFORE,

Plaintiffs demand judgment as follows:

A) Judgment In favor of the ESTATE on the first cause of action for Wrongful Death under the Americans With Disabilities Act and Federal Law in the amount of $2,500.000.00 against All Defendants.;

B) Judgment In favor of the ESTATE on the second cause of action for Wrongful Death caused by Negligence in the amount of $2,500.000.00 against All Defendants.;

C) Judgment In favor of the ESTATE on the third cause of action for Pain and Suffering in the amount of $4,000.000.00 against All Defendants.;

D) Judgment In favor of TULLINE and ADELEKE in their individual capacities on the

fourth cause of action for loss of consortium with their son in the amount of

$1,000.000.00 against All Defendants.;

Along with such other, further or different relief, as to the Court may seem just , proper and

reasonable under the premises.

Dated: Brooklyn, NY
         February 22, 2018

_____
Ira N. Weinstein
Attorney For Plaintiffs
 6103 Strickland Ave.
Brooklyn, NY 11234
Tel 718 241 2430
Fax 888 314 5399
Email inw4@yahoo.com

LIST OF EXHIBITS

A- LETTERS OF ADMINISTRATION
B- NOTICE OF CLAIM
C- ACKNOWLEDGMENT OF CLAIM
D- DENIAL OF CLAIM
E- METHODIST HOSPITAL DISCHARGE
F- HIGH SCHOOL DIPLOMA
G- CULINARY AGREE
H- BIRTH CERTIFICATE
I- DEATH CERTIFICATE
J- AUTOPSY
K- DOWNSTATE DISCHARGE REPORT

# EXHIBIT "A"

At a Surrogate's Court of the State of New York held in and for the County of Kings at 2 Johnson Street, Brooklyn, New York, on                    , 2018.

SURROGATE'S COURT: KINGS COUNTY
HON JOHN G. INGRAM, ACTING SURROGATE

JAN 16 2018

## Administration Proceeding

Estate of ADEDJI OMOLE

a/k/a  ADEDEJI OMOLE

Deceased.

## Decree
## Appointing Administrator

File No.   2016-2616/A

A petition having been filed by **Tuline Jenkins and Adeleke Omole** praying that administration of the goods, chattels and credits of the above-named decedent be granted to **Tuline Jenkins and Adeleke Omole**; and all persons named in such petition required to be cited, having been duly cited to show cause why such relief should not be granted or having duly waived the issuance of such citation and consented thereto, and it appearing that **Tuline Jenkins and Adeleke Omole** are in all respects competent to act as co-administrators of the estate of said deceased, and a

        X     bond having been dispensed with pursuant to SCPA § 801

and such representative(s) otherwise having qualified, therefore now, after due deliberation, with no one appearing in opposition thereto, it is

**Ordered and Decreed**, that Letters of Administration issue to

**Tuline Jenkins and Adeleke Omole**

**Ordered and Decreed**, that the authority of such representative(s) be restricted in accordance with, and that letters issued contain the limitation, if any, which appears immediately below.

LIMITED LETTERS OF ADMINISTRATION FOR THE SOLE PURPOSE OF COMMENCING AND PROSECUTING A CAUSE OF ACTION ON BEHALF OF THE ESTATE.

AND SAID CO-ADMINISTRATORS ARE HEREBY RESTRAINED FROM COMPROMISING ANY CAUSE OF ACTION UNTIL FURTHER COURT ORDER PURSUANT TO EPTL 5-4.6 AND UPON FILING A SATISFACTORY BOND OR SATISFACTORY SECURITY.

VOLUNTARY LETTERS OF ADMINISTRATION PREVIOUSLY GRANTED, ARE HEREBY REVOKED.

HON.  JOHN G. INGRAM,
ACTING SURROGATE

Hon. John G. Ingram
Acting Surrogate

**FACE OF DOCUMENT CONTAINS A MULTICOLORED VOID PANTOGRAPH AND MICROPRINT BORDER. THIS DOCUMENT ALSO HAS INVISIBLE FLUORESCENT FIBERS, ARTIFICIAL WATERMARK ON BACK, AND A CHEMICAL REACTIVE VOID FEATURE.**

C20 (Rev. 1/07)

Certificate# 127868

# Surrogate's Court of the State of New York
## Kings County
### Certificate of Appointment of Administrators

File #: 2016-2616/A

IT IS HEREBY CERTIFIED that Letters in the estate of the Decedent named below have been granted by this court, as follows:

Name of Decedent: **Adedji Omole**
    aka   Adedeji Omole

Date of Death: **February 24, 2016**

Domicile: **Kings County**

Fiduciary Appointed: **Adeleke Omole**
Mailing Address: 11341 Market St
Fulton MD 20759

**Tuline Jenkins**
18 Roosevelt Pl
Brooklyn NY 11233

Type of Letters Issued: **LETTERS OF ADMINISTRATION**

Letters Issued On: **January 16, 2018**

**Limitations: BOND DISPENSED PURSUANT TO SCPA 801**

**LIMITED LETTERS OF ADMINISTRATION FOR THE SOLE PURPOSE OF COMMENCING AND PROSECUTING A CAUSE OF ACTION ON BEHALF OF THE ESTATE.**

**AND SAID CO-ADMINISTRATORS ARE HEREBY RESTRAINED FROM COMPROMISING ANY CAUSE OF ACTION UNTIL FURTHER COURT ORDER PURSUANT TO EPTL 5-4.6 AND UPON FILING A SATISFACTORY BOND OR SATISFACTORY SECURITY.**

and such Letters are unrevoked and in full force as of this date.

**Dated: January 17, 2018**

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Kings County Surrogate's Court at Brooklyn, New York.

WITNESS, Hon. John G. Ingram, Acting, Judge of the Kings County Surrogate's Court.

Doreen A. Quinn, Chief Clerk
Kings County Surrogate's Court

*This Certificate is Not Valid Without the Raised Seal of the Kings County Surrogate's Court*

# EXHIBIT "B"

X13— Notice of claim against the City of New York  
may be served by electronic means, 10-10.

2010 by Blumberg Excelsior, Inc., Publisher, NYC 10013  
www.blumberg.com

In the Matter of the Claim of

ESTATE OF ADEDJI OMOLE AKA ADEDEJI OMOLE

against

**THE CITY OF NEW YORK**

TO: COMPTROLLER OF THE CITY OF NEW YORK

PLEASE TAKE NOTICE that the undersigned claimant(s) hereby make(s) claim and demand against the City of New York, as follows: [Office of the Comptroller requests the following additional information: in Section 2, specific defect (e.g. pothole) if applicable; in Section 3, street address wherever possible.]

1. The name and post office address of each claimant and claimant's attorney is:

ESTATE OF ADEDJI OMOLE AKA ADEDEJI OMOLE  
18 ROOSEVELT PL  
BROOKLYN, NY 11233

IRA N WEINSTEIN, ESQ  
6103 STRICKLAND AVE , BROOKLYN,NY       11234

2. The nature of the claim:

WRONGFUL DEATH OCCURING WHILE IN THE CARE AND CUSTODY OF NYC DEPT OF CORRECTIONS , IN TRANSIT FROM PHILADELPHIA COUNTY PRISON TO RIKERS ISLAND, NY

3. The time when, the place where and the manner in which the claim arose:

FEBRUARY 24,2016

4. The items of damage or injuries claimed are (include dollar amounts):

PECUNIARY DAMAGES, POTENTIAL EARNINGS, PAIN AND SUFFERING PUNATIVE DAMAGES ($7,500,000.00- SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS)

TOTAL AMOUNT CLAIMED                    ($7,500,000.00)

The undersigned claimant(s) therefore present(s) this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant(s) intend(s) to commence an action on this claim.

I certify that all information contained in this notice is true and correct to the best of my knowledge and belief. I understand that the willful making of any false statement of material fact herein will subject me to criminal penalties and civil liabilities.

Dated: NOVEMBER 4, 2017

Print name    IRA N WEINSTEIN

IRA N. WEINSTEIN, ESQ.

Print name

Attorney(s) for Claimant(s)

Office and Post Office Address Telephone Number

E. 6103 STRICKLAND AVE
BROOKLYN, NY 11234
tel 718 763 0600 cell 917 774 0001
fax 888 314 5399
email inw4@yahoo.com

**CORPORATE/LLC VERIFICATION**

State of New York, County of                    ss:

being duly sworn, deposes and says that deponent is the

of

corporate/LLC claimant named in the within action; that deponent has read the foregoing Notice of Claim and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes it to be true. This verification is made by deponent because said claimant is a                    and deponent an authorized person thereof, to wit its
The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows;

**INDIVIDUAL VERIFICATION**

State of New York, County of   KINGS     ss:

IRA  N  WEINSTEIN

being duly sworn, deposes and says that deponent is the claimant in the within action; that she/he has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

Sworn to before me on   March 06 2017

MICHAEL PICCINNINI
Notary Public, State of New York
No. 01PI6033812
Qualified in Kings County
Commission Expires November 29, 20___

Sworn to before me on

# EXHIBIT "C"



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date:        11/17/2017
Claim No:   2017PI031906
RE:         Acknowledgment of Claim
Your Claim/Policy#:

ADEJI OMOLE
18 ROOSEVELT PL
BROOKLYN, NY 11233

Dear Claimant:

   We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

   We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

   If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

                              Sincerely,

                              Bureau of Law & Adjustment

*Acknowledgment of Claim*

EXHIBIT "D"



**THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER**
1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

**Scott M. Stringer**
COMPTROLLER

015 - 155

Date: 11/28/2017
RE: Disallowance-Over 90 Days

ADEJI OMOLE
Claim number: 2017PI031906

ADEJI OMOLE
18 ROOSEVELT PL
BROOKLYN, NY 11233

Dear Claimant:

We regret to inform you that your claim has been disallowed. Your claim was not filed within 90 days from the date of occurrence as required by the General Municipal Law Section 50-e. Claims must be filed with either the New York City Office of The Comptroller, the New York City Law Department, the New York City Board of Education or the New York City Health and Hospitals Corporation, depending on the substance of the claim.

If you have been scheduled for a Comptroller's hearing (50-h, General Municipal Law), please deem the hearing canceled.

Very truly yours,

KRYSTYNA BORKOWSKA.

Bureau of Law & Adjustment

PERSONAL INJURY
(212) 669-2232

EXHIBIT "E"

## NEW YORK METHODIST HOSPITAL
506 6th Street, Brooklyn, NY 11215
718-780-3000 | www.nym.org

### PATIENT DISCHARGE INSTRUCTIONS

**PATIENT INFORMATION**

Name:OMOLE, ADEDEJI      DOB:9/08/1982 12:00 AM      MRN:00004865352

**ATTENDING PHYSICIAN:**

Duddempudi MD , Babu

**PRIMARY CARE PROVIDER:**


New York Methodist Hospital would like to thank you for allowing us to assist you with your healthcare needs.

The following includes patient education materials and information regarding your injury/illness.

**ACTIVE ALLERGIES:**

Erythromycin

**DISCHARGE DIAGNOSES:**


**NURSING DISCHARGE INSTRUCTIONS**
 **Current Discharge Plan:**  Home

**The following is a Complete list of the medications you should be taking if there are any questions please contact your Primary Care Physician.**

Discharge Medications List:

| Medication Name | Amount to Take | How Often to Take it | How to Take it | Additional Instructions | Generic Name |
|---|---|---|---|---|---|
| Protonix 40 mg oral enteric coated tablet | 1 TAB | DAILY | By Mouth | | pantoprazole 30DAY Supply 2 Refills |
| albuterol-ipratropium inhalation aerosol with adapter | 2 PUFF(S) | Every 6 Hours | Inhalation | | albuterol-ipratropium 30DAY Supply 2 Refills |
| budesonide-formoterol 160 mcg-4.5 mcg/inh inhalation aerosol with adapter | 2 PUFF(S) | Two Times a Day | Inhalation | | budesonide-formoterol 30DAY Supply 2 Refills |
| methotrexate 15 mg oral tablet | 1 TAB | WEEKLY | By Mouth | | methotrexate 30DAY Supply 3 Refills |
| Spiriva 18 mcg inhalation capsule | 1 EA | DAILY | Inhalation | | tiotropium 30DAY Supply 2 Refills |
| amlodipine 10 mg oral tablet | 1 TAB | DAILY | By Mouth | | amlodipine 30DAY Supply |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | 2 Refills |
| folic acid 1 mg oral tablet | 1 TAB | DAILY | By Mouth | | folic acid<br><br>30DAY Supply<br><br>2 Refills |
| Augmentin 875 mg oral tablet | 1 TAB | 1dose now,then every 12hr | By Mouth | | amoxicillin-c lavulanate<br><br>10DAY Supply |
| azathioprine 50 mg oral tablet | 3 TAB | DAILY | By Mouth | | azatHIOPRI NE<br><br>30DAY Supply |
| lisinopril 20 mg oral tablet | 1 TAB | DAILY | By Mouth | | lisinopril<br><br>30DAY Supply |
| Spiriva 18 mcg inhalation capsule | 1 CAP | DAILY | Inhalation | | tiotropium<br><br>30DAY Supply |
| Lasix 20 mg oral tablet | 1 TAB | DAILY | By Mouth | | FUROsemide<br><br>30DAY Supply |

## PATIENT DISCHARGE INSTRUCTIONS:
New York Methodist Hospital

Patient:  **OMOLE, ADEDEJI**       **MRN: 00004865352**       **FIN: 000410387479**
**Age:  29 years**   Sex:  **Male**   DOB:  **9/8/1982**
Associated Diagnoses:  **Foot pain-swelling; Dyspnea; Bilateral leg edema**
Author:  **Bui (MD) , Jeffrey P**

**Discharge Information**
   **Diagnosis**
      Foot pain-swelling (PNED 89667FB9-379F-448C-A1BC-610076715BEB).
      Dyspnea (ICD9 786.09).
      Bilateral leg edema (ICD9 782.3).
   **Problems**
      Problem list.
         <u>All Problems</u>
            hypertension / Confirmed
            asthma / Confirmed
            polymyositis / Confirmed
   **Medications:**
      Medications reviewed (See attached discharge medication list).
   **This information was discussed with you or your caregiver**
   **Patient Activity**
      You may resume normal activities.
      As tolerated.
   **Please follow this diet**
      Healthy heart.
   **Weight Monitoring**
      Please weigh yourself 3 times per week and report any gain or loss of 3 pounds or more to your physician..
   **Call doctor if you experience**
      Shortness of breath.
      Chest pain.
      Fever.
   **We are giving you a diurectic (water pill) to help lower your blood pressure. Please weigh yourself 3 times per week**
   **and tell your doctor about any weight gain or loss of 3 pounds or more.**
   **Diagnosis Specfic Education/Instructions**
      Instructions set A not applicable.
      Instructions set B not applicable.
   **Patient Education**
      Cellulitis, Easy-to-Read.
   **Follow-up:**
      Follow up with your primary physician: within  1  week(s).
   **Hospital Course**
         Pt is 29 yo M who came to the hospital for a 2 week history of lower extremity swelling that was not resolving,
         discoloration (red), and pain more on right side.  Likely cellulitis beign treated with augmentin. Patient also
         had shortness of breath likely secondary to underlying polymyositis and body habitus as patient is morbidly
         obese.  Pt also has underlying asthma and improved after duoneb treatment so shortness of breath likely
         multifactorial in nature.  Patient also found to have elevated CKMB which can be secondary to polymyositis.
         DVT was ruled out with negative doppler. Echo was WNL. Patient was found to have RLE cellulitis.  Patient
         was to have CT scan but could not tolerate laying flat.  Patient was to have v/q scan but could not secondary to
         his body habitus.  Pulmonary saw patient and cleared patient for discharge. Attending is ok with patient beind
         discharged.  Patient will be discharged with Augmentin for 10 days.  Patient is to follow up with PMD in one
         week.

      Significant Laboratory and Diagnostic Results: .
      <u>Labs</u> (Last four charted values)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WBC | H 12.0 | (JAN 21) | H 11.7 | (JAN 20) | H 10.4 | (JAN 18) | |
| Hgb | L 12.0 | (JAN 21) | L 10.8 | (JAN 20) | L 11.3 | (JAN 18) | |
| Hct | L 36.5 | (JAN 21) | L 33.7 | (JAN 20) | L 35.4 | (JAN 18) | |
| Plt | 330 | (JAN 21) | 287 | (JAN 20) | 310 | (JAN 18) | |
| Na | 140 | (JAN 21) | 142 | (JAN 20) | 139 | (JAN 18) | |
| K | 4.5 | (JAN 21) | 4.3 | (JAN 20) | 3.9 | (JAN 18) | |
| CO2 | H 34 | (JAN 21) | H 33 | (JAN 20) | H 33 | (JAN 18) | |
| Cl | 96 | (JAN 21) | 100 | (JAN 20) | 98 | (JAN 18) | |
| Cr | L 0.50 | (JAN 21) | L 0.40 | (JAN 20) | L 0.50 | (JAN 18) | |
| BUN | 9 | (JAN 21) | 12 | (JAN 20) | 9 | (JAN 18) | |
| Glucose | H 109 | (JAN 21) | 85 | (JAN 20) | H 101 | (JAN 18) | |
| Mg | 1.7 | (JAN 20) | | | | | |
| Phos | 4.0 | (JAN 20) | | | | | |
| Ca | 9.3 | (JAN 21) | 8.9 | (JAN 20) | L 8.6 | (JAN 18) | |
| PT | 13 | (JAN 20) | 13 | (JAN 18) | | | |
| INR | 1.3 | (JAN 20) | 1.2 | (JAN 18) | | | |
| PTT | 27 | (JAN 20) | 28 | (JAN 18) | | | |
| Troponin | | | 0.083 | (JAN 18) | | | |

Significant tests: CXR IMPRESSION:
No evidence of acute cardiopulmonary disease.


Echo Interpretation summary:
Clinical question:
Dyspnea
Procedure information:
Echocardiographic views were limited by poor acoustic window availability.
Left ventricle:
Systolic function was normal. Ejection fraction was estimated to be 65 %.
Although no diagnostic regional wall motion abnormality was identified, this
possibility cannot be completely excluded on the basis of this study.
Aorta, systemic arteries:
The root exhibited mild dilatation and no fibrocalcific change.
Comparisons:
No previous study is available for comparison.

Surgical procedures done this admission: No procedures performed on this admission..

**MEDICATION LEAFLETS:**

**PATIENT EDUCATION MATERIAL:**

# Cellulitis



Cellulitis is an infection of the tissue under the skin. The infected area is usually red and tender. Cellulitis is caused by germs. These germs enter the body through cuts or sores. This usually happens in the arms or lower legs.

## HOME CARE

Take medications (*antibiotics*) the way your doctor told you to. Take them until they are gone.
If the infection is on the arm or leg, keep the limb raised.
Use a warm cloth on the infected area several times per day to relieve pain and help with healing.
See your doctor again in 2 days. See him/her sooner if you have problems.
Only take over-the-counter medicine as directed by your doctor.

GET HELP IF:

You develop a fever of 100.5°F (38.1°C) or higher, and medicine does not bring it down.
The red area is spreading.
There are red streaks coming from the infected site.
Part of the infection begins to turn dark.
The joint or bone under the infected skin hurts after the skin has healed.
The infection returns after it seemed to have gone away.
The infection returns in another place after it seemed to have gone away.
A boil or bump appears. This may be an abscess.
You start to have new symptoms.

GET HELP RIGHT AWAY IF YOU OR YOUR CHILD:

Feel tired (*drowsy*).
Feel lazy, slow, or confused.
Throw up (*vomit*).
Have watery poop (*diarrhea*).
Feel ill and have muscle aches and pains.

Develop a fever of 102°F (38.9°C) or higher.

MAKE SURE YOU:

Understand these instructions.
Will watch your condition.
Will get help right away if you are not doing well or get worse.

Document Released: 06/05/2009  Document Re-Released: 10/14/2010
ExitCare® Patient Information ©2010 ExitCare, LLC.

**FOLLOW-UP INSTRUCTIONS:**

# EXHIBIT "F"



The
University of the State of New York
Education Department

Be it known that

**Deji J Omole**

*having satisfactorily completed the requirements prescribed by
the Commissioner of Education is thereby entitled to this*

High School Equivalency Diploma

In Witness Whereof *the Regents issue this diploma
under seal of the University at Albany in*

*President of the University
and Commissioner of Education*

**June 2001**

F013580          DUPLICATE ** DUPLICATE

# EXHIBIT "G"

# THE FRENCH CULINARY INSTITUTE
### 462 Broadway, New York, New York 10013
### (212) 219-8890

COPY

For Your Records

## ENROLLMENT AGREEMENT

(Effective for courses starting after October 1, 2005)

Name: Adedeji Omole

S.S.#: ~~illegible~~

Address: 18 Roosevelt Place 2nd Flr

Date of Birth: 09/08/1982

City: Brooklyn    State: N/Y    Zip: 11233    Telephone: 646-354-3844

I hereby apply to The French Culinary Institute to enroll in the course shown below. If I am accepted, I agree to all of the rules and regulations of The French Culinary Institute and to all of the statements contained herein:

## PROGRAMS

| Course | Tuition | Non Refundable Application Fee | Materials Fee* | Insurance Fee | Total Cost |
|---|---|---|---|---|---|
| [] Classic Pastry Arts | $33,140 | $100 | $700 | $10 | $33,950 |

[] **Full-time Day:** The course consists of two (2) quarters of 12 weeks length (300 hours each). Total course hours are 600 containing 25 hours per week, 5 hours per day. Each instructional hour consists of 55 minutes. Schedule of Sessions: Monday through Friday:  8:30AM to 9:25AM, 9:30AM to 10:25AM, 10:35AM to 11:30AM, 12:30PM to 1:25PM and 1:35PM to 2:30PM.
[] **Part-time Evenings:** The course consists of one (1) quarter of 14 weeks length (210 hours) and two (2) quarters of 13 weeks length (195 hours each). Total course hours are 600 containing 15 hours per week, 5 hours per day. Each instructional hour consists of 55 minutes. Schedule of Sessions: [] Monday, Wednesday & Friday 5:30PM to 6:25PM, 6:30PM to 7:25PM, 7:35PM to 9:25PM and 9:35PM to 10:30PM or [] Tuesday, Thursday & Saturday: Tuesday & Thursday: 3:30PM to 4:25PM, 4:30PM to 5:25PM, 5:35PM to 7:25PM and 7:35PM to 8:30PM; Saturday:  9:00AM to 9:55AM, 10:05AM to 11:55AM, 12:00PM to 12:55PM and 1:05PM to 2:00PM.

| Course | Tuition | Non Refundable Application Fee | Materials Fee* | Insurance Fee | Total Cost |
|---|---|---|---|---|---|
| [] **Classic Culinary Arts with Artisanal Baking** | $34,140 | $100 | $700 | $10 | $34,950 |

[] **Full-time Day:** The course consists of two (2) quarters of 12 week lengths (300 hours and 305 hours respectively). Total course hours are 605 containing 25 hours per week, 5 hours per day, except as provided below. Each instructional hour consists of 55 minutes. Schedule of Sessions: Monday through Friday: 9:00AM to 9:55AM, 10:00AM to 10:55AM, 11:05AM to 12:00PM, 1:00PM to 1:55PM and 2:05PM to 3:00PM. A single week in the second quarter of the program consists of 30 hours per week, 6 hours per day. The Schedule of Sessions for that week is as follows: Monday through Friday: 8:30AM to 9:25AM, 9:35AM to 10:30AM, 10:35AM to 12:25PM, 1:00PM to 1:55PM, and 2:05PM to 3:00PM.

| Course | Tuition | Non Refundable Application Fee | Materials Fee* | Insurance Fee | Total Cost |
|---|---|---|---|---|---|
| ☑ **Classic Culinary Arts** | $29,940 | $100 | $700 | $10 | $30,750 |

[] **Part-time Evening:** The course consists of one (1) quarter of 14 weeks length (210 hours) and two (2) quarters of 13 weeks length (195 hours each). Total course hours are 600 containing 15 hours per week, 5 hours per day. Each instructional hour consists of 55 minutes. Schedule of Sessions:  [] Monday, Wednesday & Friday  or ☑ Tuesday, Thursday & Saturday 5:45PM to 6:40PM, 6:45PM to 7:40PM, 7:50PM to 9:40PM and 9:50PM to 10:45PM.

*Materials Fee includes sales tax.
School Hours of Operation: Monday through Saturday        8:30AM to 10:45PM
Course Start Date: 12-6-05        Course End Date 9-18-06

BUREAU OF PROPRIETARY SCHOOL SUPERVISION APPROVED

DEC 1 2004

BY
EFFECTIVE

Page 1 of 3

CPA05

Rev. 341705

## PAYMENT

The School acknowledges receipt of an initial deposit of $ 500 .  The balance of the Total Cost specified above is due in accordance with the payment policies set forth in the current Student Catalog except to the extent that the School shall agree otherwise in writing.

## COURSE COMPLETION & TRANSCRIPTS

A diploma will be issued when a student has met all academic and financial requirements.

## CANCELLATION & REFUND POLICY

A student may cancel this agreement by notice in writing delivered to the School, attention of the Director, at any time prior to or during the first week of instruction covered by this agreement.  A student who has not visited the School's facility prior to enrollment may withdraw without penalty within three days following attendance at orientation or a tour of the facilities and inspection of the equipment.  A student who cancels within 7 days of signing the enrollment agreement receives all moneys paid with the exception of the non-refundable Application Fee.  **Due to their personal nature, uniforms are not returnable.**
Thereafter, the student will be liable for:
A. The non-refundable Application Fee, plus
B. The cost of insurance fee and materials accepted and not returned in good condition within 20 days after the student withdrawal from the school, plus
C. Tuition liability as of the student's last day of physical attendance. Tuition liability is limited to the quarter during which the student withdrew or was terminated, and any previous quarter completed.

| If termination occurs during First Quarter: | | |
|---|---|---|
| Prior to or during the first Week | School may keep... | 0% |
| During Second week | School may keep... | 25% |
| During Third week | School may keep... | 50% |
| During Fourth week | School may keep... | 75% |
| After the Fourth week | School may keep... | 100% |
| | | |
| Subsequent Quarters: | | |
| During the First week | School may keep... | 25% |
| During the Second week | School may keep... | 50% |
| During the Third week | School may keep... | 75% |
| After the Third week | School may keep... | 100% |

D. If the School rejects this agreement, all payments made under this agreement shall be refunded in full except the application fee and the cost of materials accepted and not returned in good condition within 20 days of rejection.
E. In case of injury, prolonged illness or other circumstances beyond the student's control which render it impracticable for the student to continue in the school, the school will, within 30 days after notice of the circumstances, propose and will thereafter make a settlement of the student's obligation to the school which is fair and reasonable to the student and the school.
F. The student refund may be more than stated above if the accrediting agency refund policy results in a greater refund.
G. Amounts paid in excess of the charges as determined above will be refunded within 45 days of the date on which the student gives the school written notice of withdrawal or if the student does not give written notice, within 45 days of the date that the school determines that the Student has withdrawn. Refunds of Federal Title IV funds shall be made within 30 days of the student's withdrawal date, if the student gives written notice of withdrawal or is expelled, or within 30 days of the earliest of a) the date on which the school determines that the student has dropped out, b) the expiration of the academic term in which the student withdraws, or c) the expiration of the period of enrollment for which the student has been charged.

## TERMINATION BY THE SCHOOL

The student may be dismissed from the school for misconduct, excessive absence or academic deficiency as described in the catalog, or failure to make tuition payments in accordance with this contract.

## PLACEMENT

While placement services may be provided, it is understood that the school cannot promise or guarantee employment to any student or graduate.

## FINANCIAL AID

If the student is applying for either Institutional Financial Aid or Federal Financial Aid as sponsored by a third party or agency, then one or more of the following attachments must be checked and is incorporated into this enrollment agreement.

Attachment A _____          Attachment B _____

## HIGH SCHOOL GRADUATION

This contract is subject to applicant's graduation from high school before the Course Start Date set forth above and may be cancelled in failure thereof or in failure of the student to provide proof of graduation.

## STUDENT STATEMENT

I have read this agreement and agree to abide by its provisions. I have retained a completely filled in copy of the agreement and school catalog and agree to abide by the rules stated within it.

Applicant's Signature ___*Adedeji Dnole*___          Date _7/21/05_

Parent Signature if Applicant Under Age 18 _____          Date _____

## CO-SIGNER STATEMENT

For value received, the undersigned hereby agrees to be jointly and severally liable with the applicant on the obligations of the applicant hereunder.

Co-signer 's Signature _____          Date _____

## STUDENT ENDORSEMENT

I acknowledge that (a) I have received the student rights disclosure material and (b) that the admissions representative whose name and signature appears below and any other person whose name appears to the left are agents of the school who have handled my enrollment.

_____ 1150384_          ___*Adedeji Dnole*  7/21/05___
Licensed Agent and Certificate Number          **Applicant's Signature**          Date

_____
Licensed Agent and Certificate Number

## ACCEPTANCE STATEMENT

This is to certify that in my opinion the above applicant meets the standards for application to The French Culinary Institute and is recommended by me to the admissions committee. I hereby acknowledge initial payment of $ _500 -_ .

Accepted on behalf of The French Culinary Institute by:

_____          _7/21/05_          _Steven Srebrensch_ 1150384
Signature-Licensed Admissions Representative          Date          Print-Name          Certificate Number

_____          _____          _____          _____
Signature-School Official          Date          Print Name          Title

# EXHIBIT "H"

## VITAL RECORDS CERTIFICATE

# CERTIFICATION OF BIRTH

This is a certification of name and birth facts on file in the Office of Vital Records, Department of Health and Mental Hygiene, City of New York.

DATE OF BIRTH **SEPTEMBER 08, 1982**

CERTIFICATE No.

BOROUGH **BROOKLYN**

DATE FILED **09-21-82**

DATE ISSUED **05-25-07**

NAME: **ADEDE J1 JOSEPH OMOLE***

SEX: **MALE**

MOTHER'S MAIDEN NAME: **TULLINE JENKINS**

FATHER'S NAME: **ADELEKE OMOLE**

*Steven P. Schwartz*
Steven P. Schwartz, Ph.D.
City Registrar

Do not accept this transcript unless it bears the security features listed on the back. Reproduction or alteration of this transcript is prohibited by §3.21 of the New York City Health Code if the purpose is the evasion or violation of any provision of the Health Code or any other law.

13591067          Doc. No. L705574

The City of New York

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

EXHIBIT "I"

# STATE OF NEW JERSEY

A0010467309

THIS DOCUMENT CONTAINS A UNIQUE STATE OF NJ WATERMARK HOLD AT LIGHT TO VERIFY

# CERTIFICATE OF DEATH

**STATE FILE NUMBER**

20160012953

DECEASED NAME

## *ADEDJI OMOLE*

DATE OF BIRTH

*09/08/1982*

SEX

*MALE*

DATE OF DEATH

*02/24/2016*

PLACE OF DEATH

**NEWARK CITY**

COUNTY OF DEATH

**ESSEX**

RESIDENCE ADDRESS

**18 ROOSEVELT PL**

SOCIAL SECURITY NUMBER

*UNKNOWN*

MUNICIPALITY OF RESIDENCE

**BROOKLYN, NY**

COUNTY OF RESIDENCE

**KINGS**

DOMESTIC STATUS

*SINGLE/NEVER MARRIED*

MANNER OF DEATH: ***PENDING INVESTIGATION***

CAUSE OF DEATH:
*PENDING FURTHER STUDIES*

DATE ISSUED:   **MARCH 8, 2016**

DATE FILED WITH REGISTRAR:   **03/08/2016**

AMENDED DATE:

ISSUED BY:
*Newark Vital Statistics*

*LaGuanda Frazier, Local Registrar*

This is to certify that the above is correctly
copied from a record on file in my office.

*Certified copy not valid unless the raised
Great Seal of the State of New Jersey
or the seal of the issuing municipality
or county, is affixed hereon.*

Vincent T. Arrisi
State Registrar
Office of Vital Statistics and Registry

REG-42A
JAN 13



THIS DOCUMENT HAS MULTIPLE SECURITY FEATURES TO DETER FRAUD. VOID IF ALTERED

EXHIBIT "J"

### State of New Jersey

**CHRIS CHRISTIE**
*Governor*

**KIM GUADAGNO**
*Lieutenant Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF CRIMINAL JUSTICE
OFFICE OF THE STATE MEDICAL EXAMINER
EDWIN H. ALBANO INSTITUTE OF FORENSIC SCIENCE
NORTHERN REGIONAL MEDICAL EXAMINER OFFICE
325 NORFOLK STREET
NEWARK, NJ 07103-2701
TELEPHONE (973) 648-7259   FAX (973) 648-3692

**JOHN J. HOFFMAN**
*Acting Attorney General*

**ELIE HONIG**
*Director*

**ANDREW L. FALZON, M.D.**
*Acting State Medical Examiner*

DATE: _May 17, 2016_

TO WHOM IT MAY CONCERN:

This is to certify that the attached is a sealed photocopy of the record of
_OMOLE, Adedji_ as the same appears in the medical
examiners files of this facility.

I further certify that said records were maintained in the usual course of
business.

I make this certification for the purpose of qualifying the attached record for
introduction as evidence in court, as outlined in N.J.S.A 52:17B-92.

_Kim Williams-Ricks_
KIM WILLIAMS-RICKS
RECORDS CUSTODIAN

REPORT NOT OFFICIAL WITHOUT RAISED SEAL



### State of New Jersey
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF CRIMINAL JUSTICE
OFFICE OF THE STATE MEDICAL EXAMINER
EDWIN H. ALBANO INSTITUTE OF FORENSIC SCIENCE
NORTHERN REGIONAL MEDICAL EXAMINER OFFICE
325 NORFOLK STREET
NEWARK, NJ 07103-2701
TELEPHONE (973) 648-7259   FAX (973) 648-3692

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lieutenant Governor*

ROBERT LOUGY
*Acting Attorney General*

ELIE HONIG
*Director*

ANDREW L. FALZON, M.D.
*Acting State Medical Examiner*

07160361
OMOLE, ADEDJI

FINAL REPORT

THE AUTOPSY REPORT WAS AMENDED TO READ AS FOLLOWS:

CAUSE OF DEATH:       HYPERTENSIVE   CARDIOVASCULAR DISEASE WITH
CONGESTIVE HEART FAILURE

CONTRIBUTORY CAUSE: MORBID OBESITY

MANNER OF DEATH:       NATURAL

AMENDED BY: _____
Abraham T. Philip, M.D.,
Assistant Medical Examiner

DATE: MAY 11, 2016

ATP/no
DIST: County Pros. Off; File (1) ATP (1)

REPORT NOT OFFICIAL WITHOUT RAISED SEAL



### State of New Jersey
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF CRIMINAL JUSTICE
OFFICE OF THE STATE MEDICAL EXAMINER
EDWIN H. ALBANO INSTITUTE OF FORENSIC SCIENCE
NORTHERN REGIONAL MEDICAL EXAMINER OFFICE
325 NORFOLK STREET
NEWARK, NJ 07103-2701
TELEPHONE (973) 648-7259   FAX (973) 648-3692

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lieutenant Governor*

JOHN J. HOFFMAN
*Acting Attorney General*

ELIE HONIG
*Director*

ANDREW L. FALZON, M.D.
*Acting State Medical Examiner*

07160361
OMOLE, ADEDJI

### CERTIFICATION OF AUTOPSY PROCEDURE:

This is to certify that I, Abraham T.  Philip, M.D., Assistant Medical Examiner, have conducted a postmortem examination and autopsy, on the unembalmed, refrigerated and identified remains of Mr. Adedji Omole, at the Institute of Forensic Science, Regional Medical Examiner's Office, (RMEO), Newark, New Jersey on February 25, 2016, between 1000 and 1400 hours, with the assistance of Forensic Technician Mr. Sylvanus Ugorji.  Appropriate photographs of the body, including relevant external and internal findings were taken by Mr. Darryl Green.  Also present during the autopsy procedure was Captain Nathaniel Bialek, of the New York City Corrections Department.

### IDENTIFICATION:

The decedent was initially identified at by the corrections officer.  The identification was later confirmed by fingerprint comparison.  There is in addition a hospital identification tag, located around the left wrist, with the decedent's name and admission data including medical and account numbers.  The body was transferred from the hospital, St. Michael's Medical Center to the RMEO in a zippered black body bag, sealed with lock#: 2543, for further evaluation.  There is a RMEO identification tag located around the right wrist with the decedent's name: Omole, Adedji and case number: 07-16-0361.

**NOTE:** The fingers are with remnants of fingerprint ink.  The details of when the finger prints were previously taken are unknown.

### ADDITIONAL FEATURES FOR IDENTIFICATION INCLUDE:

1.  A 9 x 8 cm monochromatic tattoo of the words "I AM STILL HERE" on the anterior aspect of the right forearm.
2.  A monochromatic 15 x 7 cm tattoo of the words "BIGGA FLIXXX" and "ENT" on the back of the left forearm.
3.  A 17 x 5 cm monchromatic tattoo of an unidentified word on the anterior aspect of the left forearm.

**REPORT NOT OFFICIAL WITHOUT RAISED SEAL**

07160361                                                                                     2
OMOLE, ADEDJI

## X-RAYS:

Postmortem X-rays are not made  at the RMEO.

## EVIDENCE OF MEDICAL THERAPY:

The following medical and therapeutic devices are present and appropriately placed on the body:

1.      Endotracheal tube.

2.      Intravascular lines established on the back of the left hand.

3.      There are multiple cardiac and asthma medications sent with the decedent.

## CLOTHING/ PERSONAL EFFECTS:

When first viewed  the decedent is without clothes.  Sent separately in a plastic bag are the following items of personal clothing:

1.      Sweatshirt, previously cut.

2.      Sweat pants.

3.      White underwear.
4.
5.      Hospital gown, which is discarded after review.

## EXTERNAL EXAMINATION:

The body is that of an adult man, measuring 72 inches in length and weighing 446 pounds. The Body Mass Index (BMI) is 60.5 kg/m$^2$. The body is of a well developed and well nourished man with an overall appearance markedly more than the stated age of 33 years.

The scalp hair is dark and curly, measuring between 4 and 6 cm.  The facial skeleton is intact to palpation.  The eyelids are unremarkable.  The conjunctivae are congested, without discrete hemorrhage.  The sclerae are nonicteric. The irides are brown.  The ear lobes are unremarkable.  The lips are unremarkable.  The frenulae of the oral cavity are without lesion.  The oral cavity is moist. There is a mustache, with hairs measuring up to 2 cm, and a beard, with hair measuring up to 4 cm.

The neck is without injury.  The trachea is central.  The thyroid gland is not enlarged.  There are no palpable paratracheal masses.  The chest is without deformity. The abdomen is distended and with multiple stretch striae.

The extremities are normal and symmetrical.  There is dark axillary hair.  The hands are  not bagged.  The fingernails are short and the nailbeds are unremarkable. There is a vertical 8 cm scar over the right hip joint.  There is a 4 cm scar on the anterior aspect of the left hip.   There are multiple scars to the skin overlying the knee joints.   There is scant distribution of hair on the legs.

**REPORT NOT OFFICIAL WITHOUT RAISED SEAL**

07160361
OMOLE, ADEDJI

3

There is extensive red-brown color change to the skin of the legs.   There is wound dressing to the dorsum of the left foot consistent with attempt at establishing an intravascular line.  The toenails are thickened and deformed.   The pedal surfaces are clean.

The back is without lesion.  The anus is unremarkable.

## POST MORTEM CHANGES:

There is severe symmetrical rigor mortis in the jaw and the extremities.  There is blanching dependent posterior lividity.

## EVIDENCE OF TRAUMA:

1. There are fractures of the costochondral areas of the 5th, 6th and 7th ribs, on the left side. There is minimal infiltration of blood within the intercostal spaces.
2. The liver is significant for a horizontal 12.5 cm laceration to the right lobe of the liver on its lateral aspect.
3. There is a separate 4 x 3 cm subcapsular hematoma to the right lobe of the liver on its anterior aspect.
4. There is 380 ml of blood in the abdominal cavity.

**NOTE:** There are no cutaneous injuries corresponding to the injury to the liver.   There are no other recent physical injuries to the body.

## INTERNAL EXAMINATION:

**BODY CAVITIES:** The scalp is reflected by the usual ear-to-ear incision.  The thoraco-abdominal cavity is opened in layers by the usual Y-shaped incision.  There are no injuries noted in the sub cutaneous areas of the anterior torso.   The abdominal subcutaneous fat measures 8 cm, at a level 2 cm, below the umbilicus.  All major internal organs are in their normal anatomic position with the usual relationship.  There is the usual amount of fluid, and no pus or blood, in the bilateral chest cavities.  The volume of blood in the abdominal cavity is described under **"EVIDENCE OF TRAUMA."** There are a few fibrous adhesions within the bilateral chest cavities.  There are no fibrous adhesions within the abdominal cavity.

**CENTRAL NERVOUS SYSTEM:** There is no scalp laceration or subgaleal hemorrhage.  The skull is intact and without fractures.  On incising the skull, there is no hemorrhage in the epidural or subdural locations.  The leptomeninges are with mildly congested blood vessels otherwise thin and without lesion.  The brain weighs 1575 grams.  The cerebral hemispheres are with the usual pattern of sulci and gyri.  Careful examination of the surface reveals no contusion, tumor, edema, or infection.  Serial coronal sections reveal no focal lesion.  The deep nuclei are of the usual size and shape.  The brain stem and cerebellum are without lesion.  The blood vessels of the Circle of Willis are without lesion.

**NECK ORGANS:** The neck organs are examined in situ, both visually and by palpation, after reflection of the skin.  The neck organs are then dissected in a layer wise manner and removed from the tongue to the trachea. There is no infiltration of blood within the muscles and soft tissues of the neck.  The cartilages of the epiglottis and larynx are intact.  The hyoid bone is intact.  The tongue is grossly unremarkable.  The tongue is serially sectioned and there are no bite marks.

**REPORT NOT OFFICIAL WITHOUT RAISED SEAL**

07160361                                                                                                4
OMOLE, ADEDJI

**CARDIOVASCULAR SYSTEM:** The heart weighs 755 grams. The epicardial surface is without lesion. The coronary arteries have a normal origin and essentially follow a normal anatomic course. There is focal intramyocardial bridging of the mid segment of the left anterior descending coronary artery. At its deepest point the bridging is 0.5 cm below the surface. There is no significant atherosclerotic occlusion of the major epicardial coronary arteries. The myocardium is red-brown and without fibrosis, hemorrhages, or discoloration. The free wall of the right ventricle measures 0.8 cm, and the free wall of the left ventricle measures 2 cm and the septal thickness is 3 cm, each. The cardiac valve measurements are within normal limits, and are as follows: tricuspid, pulmonic, mitral and aortic are: 14, 11, 12, and 9 cm, respectively. The cardiac valves are without lesion. The aorta is with mild atherosclerotic changes consisting of atherosclerotic plaques. There are small plaque like lesions to the pulmonary artery on the right side consistent with hypertension. The other great vessels arise and branch normally.

**RESPIRATORY SYSTEM:** The right and left lungs weigh 507 and 498 grams, respectively. The pleural surfaces are deep purple in color. Serial sections of the lungs reveal spongy red brown parenchyma. There is mild anthracotic pigment deposition in sub pleural and intraparenchymal locations. The tracheobronchial tree is without lesion. The pulmonary vasculature is without lesion. There is no thromboembolus.

**HEPATOBILIARY SYSTEM:** The liver weighs 2765 grams. The capsular surfaces are mixed yellow and brown. Serial sections reveal a brown parenchyma without fibrosis or a slippery texture. There is green yellow bile and no gallstones.

**HEMOLYMPHATIC SYSTEM:** The spleen weighs 375 grams. The surface is gray. Serial sections reveal a softened, red parenchyma. The follicles could not be evaluated. There is no generalized lymphadenopathy.

**GENITOURINARY SYSTEM:** The right and left kidneys weigh 196 and 273 grams, respectively. The cortical surfaces are smooth and with multiple fetal lobulations otherwise without lesions. The renal calyces and pelves are without lesion. The bladder contains approximately 20 ml. of urine. The bladder mucosa is unremarkable. The prostate is unremarkable.

**GASTROINTESTINAL SYSTEM:** The esophagus is without lesion. The esophago-gastric junction is intact and without lesion. The stomach contains 400 ml. of tan fluid with recognizable pieces of unidentified meat. The small and large intestines are without lesion. The vermiform appendix is present.

**ENDOCRINE SYSTEM:** The pituitary, thyroid gland and adrenal glands are normal in size, color and consistency. The adrenal glands are with autolytic changes. The pancreas is without autolytic changes and appears unremarkable in lobulations, color and texture.

**MUSCULOSKELETAL SYSTEM:** The muscles and bones are of normal development. The lateral and posterior walls of the chest are unremarkable. The spine is without changes of osteoarthritis. There are no changes of osteoporosis.

**ADDITIONAL DISSECTION:** The skin of the entire back of the torso and the extremities are reflected. There are no additional injuries revealed by this procedure.

**REPORT NOT OFFICIAL WITHOUT RAISED SEAL**

07160361                                                                                    5
OMOLE, ADEDJI

## SPECIAL EXAMINATION:

**EVIDENCE SUBMITTED:** The following are handed over to Captain Nathaniel Bialek, of the New York Corrections Department:

1.      A DVD with autopsy photographs.

**EVIDENCE RETAINED:** A DNA archival matrix card is prepared.  Finger prints are obtained. These along with a sampling of pulled hairs are retained along with the records of this case.

**HISTOLOGY:** Small sections of all major internal organs are retained in formalin for evaluation if indicated.  Small sections of the following vital organs are submitted for microscopic analysis in the following cassettes: 1. - kidneys; 2. - liver with the laceration; 3. - random liver; 4. - right lung; 5. - left lung; 6. - brain; 7. - left anterior descending coronary artery with intramyocardial bridging; 8. - myocardium from high septum; 9. - random myocardium.  Additional sections of the heart are submitted in cassettes marked A1 to A18.

**SPECIAL CHEMISTRY:** A urine dip stick evaluation is performed.  The test is negative for elevated glucose or ketones.

**TOXICOLOGY:** Blood, body fluids and tissues are taken for toxicological studies are delineated on the toxicology request form.

## AUTOPSY FINDINGS:

1.      Hypertensive cardiovascular disease.
   A.      Concentric biventricular myocardial hypertrophy, heart weight 755 grams.
   B.      Markedly dilated cardiac chambers.
   C.      Septal thickness markedly more than the left ventricular free wall.
   D.      An idiopathic hypertrophic sub aortic stenosis type condition could not be ruled out.
   E.      Elevated creatinine kinase concentration at 616 (Normal 39 - 308) U/L indicates probable myocardial ischemia or rhabdomyolysis.
   F.      The presence of contraction band necrosis supports the opinion there was myocardial ischemia.

2.      Congestive heart failure.
   A.      Micronodular cirrhosis of the liver, with markedly friable liver; liver weight 2765 grams.
   B.      Pulmonary hypertension, combined lung weight 1005 grams.
   C.      Skin changes of stasis dermatitis.
   D.      Congestive heart failure also documented clinically.

3.      Morbid obesity; Body Mass Index (BMI) is 60.5 kg/m$^2$.
   A.      Probably Obesity related hyperventilation syndrome.
   B.      Was evaluated for pulmonary function by spirometer.
   C.      Both Forced expiratory volume at 1 minute (FEW1) and Forced ventilatory capacity (FVC)  markedly compromised.
   D.      These changes are consistent with Obstructive lung disease.
   E.      These respiratory condition improved after administration of bronchodilators.

**REPORT NOT OFFICIAL WITHOUT RAISED SEAL**

07160361                                                                                          6
OMOLE, ADEDJI

    F.     Total lung capacity and diffusion capacity was compromised.
    G.    These changes indicate a restrictive lung disease.
    H.    Pulmonary edema; Combined lung weight 1005 grams.
    I.     Pulmonary edema and pulmonary venous hypertension also documented clinically by chest x-ray.
    J.    Baseline elevated carbon dioxide retention 56 (Normal range 22 - 29) mmol/L.

4.    Minor Cardiac abnormalities.
    A.    Focal intramyocardial bridging, left anterior descending coronary artery.
    B.    Mucinous degeneration aortic valve.
    C.    Mucinous degeneration and myxomatous changes are associated with sudden cardiac arrhythmia.

5.    Blunt trauma to the torso.
    A.    Fracture at the costochondral region of ribs 5 to 7 on the left side.
    B.    This injury definitely related to resuscitation.
    C.    Liver laceration with hemoperitoneum.
    D.    This injury also could be due to resuscitation.
    E.    No cutaneous or sub cutaneous injuries corresponding to these internal injuries.

5.    History of remote surgery and possible biopsy for myositis.
    A.    Scars on the lower extremity. No additional information was unavailable.
    B.    Decedent ambulated with support of a cane.

6.    Toxicology tests negative;  See separate toxicology report.
    A.    The toxicology tests are negative for illicit drugs and multiple medications.

**CAUSE OF DEATH:**

    Hypertensive cardiovascular disease with congestive heart failure.

**CONTRIBUTORY CONDITION:**

    Morbid obesity.

**MANNER OF DEATH:**

    Natural.

Abraham T. Philip, M.D.,
Assistant Medical Examiner

ATP/no
DIST:  County Pros. Off; SMEO; File (1) ATP (1)

**REPORT NOT OFFICIAL WITHOUT RAISED SEAL**

07160361                                                                                    7
OMOLE, ADEDJI

## MICROSCOPIC REPORT-MAY 11, 2016:

**Brain (# of section: 1; Slide #:  4.)**
      Essentially unremarkable cerebellar gray and white matter.

**Heart with coronary arteries and root of aortic valve. (# of sections: 21; Slide #s: 7, 8, 9  & A**
      **1 to A18; with mucin stains on slides #s: 7, A5, A9, & A14.)**
      The myocardium is without overt necrosis, acute inflammatory infiltrate or hemorrhage.
      There are multiple areas with contraction band necrosis; best  seen on slide #s:  A14.
      There is mild interstitial  peri- vascular fibrosis with numerous boxcar shaped nuclei.
      The section of the coronary artery  submitted (Slide # 7) is with intramyocardial bridging.
      There is no significant luminal compromise due to atheromatous plaque formations.
      In the same slide there is an adjacent nerve bundle with the appearance of myxomatous
      degeneration.  The other neural elements are without significant changes.
      Myxomatous changes are also seen in sections of the septal myocardium with attached roots
      of the aorta (Slide #s A5, A7 and A 14).
      Mucin stains reveal mucin positive material within the layers of cardiac valve submitted.
      The changes are more subtle, but positive within the neural element described above.

**Kidney (# of sections: 2; Slide #: 1.)**
      Essentially unremarkable renal glomeruli, tubules and blood vessels.

**Liver (# of sections: 1; Slide #:  2.)**
      There is marked vascular congestion.  There is no bile stasis.
      The section of the liver with laceration (Slide # 2) is with disruption of the capsule and
      increased infiltration of blood within the hepatocytes.
      The chronic inflammatory infiltrate surrounding the portal triads is not significantly
      increased. There is no acute inflammatory infiltrate within the hepatic lobules, no piecemeal
      necrosis or bridging fibrosis.
      There are multiple aggregates of hepatocytes with micro and macro vesicular steatosis.

**Lungs (# of sections:  4; Slide #s: 5 & 6.)**
      There is  marked vascular congestion.  Focal areas are with extravasation of blood within
      alveolar spaces.  There is moderate eosinophilic alveolar material consistent with edema
      fluid.  There are focal  areas with deposits of anthracotic pigment.
      There is mild interstitial fibrosis, without inflammatory infiltrate within the alveolar spaces.

                                          Abraham T. Philip, M.D.,
                                          Assistant Medical Examiner

ATP/no
DIST.: County Pros. Off; SMEO; File (1) ATP (1)

## REPORT NOT OFFICIAL WITHOUT RAISED SEAL

STATE OF NEW JERSEY
STATE TOXICOLOGY LABORATORY
EDWIN H. ALBANO INSTITUTE OF FORENSIC SCIENCE
325 Norfolk Street
Newark, New Jersey   07103

Phone: 973-648-3915
FAX:   973-648-7618

## TOXICOLOGY REPORT
-----------------

Lab No: 16-0403

Received: 2-26-16 1054 js

Name: OMOLE, Adedji

COYRSEQNO: 07-16-0361/NA

Age: 33      Sex: M Race: B

Submitting ME: PHILIP

Specimens submitted: Femoral-blood-1, femoral-blood-2, urine, bile, vitreous, brain, liver, stomach-content.

Analysis requested : Volatile screen, Single screen, Double screen basic acidic/neutral

---

RESULTS:            Report Date: 12:53 PM  WED., 30  MAR., 2016

FEMORAL-BLOOD-1:

Not Detected -
   Volatiles: Acetone,Ethanol,Isopropanol,Methanol.
   Drugs and other compounds: 6-Mono-acetyl-morphine,Acetaminophen,Amitriptyline,Amobarbital,
   Amoxapine,Barbital,Barbiturates,Benzodiazepines,Benztropine,Brompheniramine,Bupivacaine,Bupropion,
   Buspirone,Butabarbital,Butalbital,Cannabinoids,Carbamazepine,Carbon monoxide,Carisoprodol,
   Chlordiazepoxide,Chlorpheniramine,Chlorpromazine,Citalopram,Cocaine metabolites,Cocaine,Codeine,
   Colchicine,Cyanide,Cyclobenzaprine,Desipramine,Dextromethorphan,Diazepam,Diltiazem,
   Diphenhydramine,Doxepin,Doxylamine,Ethosuximide,Fentanyl,Fluoxetine,Glutethimide,
   Hydrocodone,Hydromorphone,Hydroxyzine,Ibuprofen,Imipramine,Ketamine,Levetiracetam,
   Lidocaine,MDMA,Meperidine,Mephedrone,Mephobarbital,Meprobamate,Mesoridazine,
   Methadone,Methamphetamine,Methocarbamol,Methsuximide,Methylone,Metoprolol,Midazolam,
   Mirtazapine,Morphine (free),Naproxen,Nefazodone,Nortriptyline,Olanzapine,Oxcarbazepine,
   Oxycodone,Oxymorphone,Papaverine,Paroxetine,Pentazocine,Pentobarbital,Phencyclidine (PCP),
   Phenobarbital,Phensuximide,Phenytoin,Pregabalin,Primidone,Procainamide,Promethazine,
   Propofol,Propoxyphene,Propranolol,Protriptyline,Pyrilamine,Quetiapine,Quinidine,
   Salicylate,Secobarbital,Sertraline,Theophylline,Thiopental,Thioridazine,Tramadol,
   Trazodone,Tricyclic Antidepressants,Trihexyphenidyl,Trimipramine,Venlafaxine,Verapamil,Warfarin,
   Zolpidem.

URINE:

Not Detected -
   Drugs and other compounds: 6-Mono-acetyl-morphine,Amphetamine,Barbiturates,Benzodiazepines,
   Cannabinoids,Cocaine metabolites,Codeine,Hydrocodone,Hydromorphone,Methadone,Methamphetamine,
   Morphine (free),Oxycodone,Oxymorphone,Phencyclidine (PCP),Phenytoin,Propoxyphene,Tricyclic Antidepressants.

Signature on file.
-----------------------------
Ralph Gagliano
FORENSIC TOXICOLOGIST

/jr
16-0403

ATP 3/4/2016

EXHIBIT "K"

**OMOLE, Adedeji**
Sex: M   Age: 29Y   DOB: 08Sep1982
MRN: 000001283993   Account#: 7123648716
Admit: 28May12 1237   Attending: KATRI, YAKOUB  MD
Preliminary: Temporary Chart Copy



## Allergies / Intolerances

Medication                                              Reaction
ERYTHROMYCIN BASE                            Other

## Discharge Diagnoses

**Primary Diagnosis**
Chicken Pox

**Additional Diagnoses**

Newly diagnosed Hepatitis C ,Asthma ,HTN ,Polymyositis (dx'd 2007) ,Morbid Obesity

DR· GoLLA
25260

## Follow Up Care Instructions

### Destination

Home   No Services

## Smoking Cessation

It is important to your health that you do not smoke. If you smoke and want help quitting, call the NYS Smokers Quit Line at

**1-866-NY-QUITS.** Information about smoking cessation including ongoing support, nicotine replacement and avoiding second hand smoke has been received.

Vaccines

**Pneumococcal Vaccine:** Not given. Reason: Does not meet immunization criteria

**Influenza Vaccine:** Not given. Reason: Does not meet immunization criteria

**Additional vaccines given during hospitalization:**

| Vaccine | Date |
|---------|------|
| None |  |

## Follow Up Appointments & Referrals

| Provider Name | Phone | Schedule Appt In | Instructions |
|---------------|-------|------------------|--------------|
| PCP - Rheumatologist |  | 1 week |  |

| Clinic Name | Phone | Schedule Appt In | Instructions |
|-------------|-------|------------------|--------------|
| GI Clinic | 718-780-4787 | Wednesday | Hepatitis C Viral Load |
| Pulmonary | 718-780-4787 | 2 Weeks |  |

Comments

Patient should follow-up for Hepatitis C viral load at the clinic.

## MD Diet Instructions

Low fat

## Activities

| Activity | Restriction Level | Resume Activity | Comments |
|---|---|---|---|
| Resume Normal Activity | With Help | | |
| Lifting Limits | With Help | | |
| Driving | Independent | | |
| Activity as Tolerated | With Help | | |
| Alcohol | Not Allowed | | |

## Patient Discharge Instructions Checklist

Interpreter used to give instructions as necessary.

Discharge medications/treatments discussed and understood by patient/support person.

Prescriptions given and discussed with patient/support person.

Contact your physician if you have any further questions.

Bring these discharge Instructions (and weight chart, if applicable) to next Doctor's visit.

## Note Details

Last Updating Clinician: VALLEJO, LEAA  (RN)   4JUN12 12:57:23

Last Updating Provider: ABASSI, LILA  (MD)   4Jun2012 12:39:18

Last Provider Updating Meds: ABASSI, LILA  (MD)   4Jun2012 12:28:22

Last Updated By: VALLEJO, LEAA  (RN)   4JUN12 12:57:23

Electronically Signed By Provider: ABASSI, LILA  (MD)   4Jun2012 12:39:18

Finalized By:

# Discharge Medication Instructions

| Action | Drug Name | Dose | Route | Frequency | Next Dose Due | Duration/ Ending Date | Rx |
|---|---|---|---|---|---|---|---|
| **Take The Following Medications** | | | | | | | |
| New | **Amlodipine Besylate 10MG Tab PO** | 10 Milligrams | by mouth | Take once daily | 04JUN2012 | | |
| Same | **ALBUTEROL (VENTOLIN)** | 1 to 2 Puffs | Inh | Take as needed | | | |
| | *Special Instructions* | SOB | | | | | |
| Same | **AZATHIOPRINE SODIUM (IMURAN)** | 150 Milligrams | by mouth | Take once daily | 04JUN2012 | | ✓ |
| Same | **COMBIVENT (ALBUTEROL/IPRATROPIUM)** | 1 Puff | Inh | Take twice a day As Needed | | | |
| | *Special Instructions* | Asthma | | | | | |
| Same | **LISINOPRIL ( PRINIVIL)** | 10 Milligrams | by mouth | Take once daily | 04JUN2012 | | |
| Same | **METHOTREXATE** | 15 Milligrams | by mouth | Take weekly | 04JUN2012 | | ✓ |
| Same | **MOTRIN (IBUPROFEN )** | 400 Milligrams | by mouth | Take three times a day As Needed | | | |
| | *Special Instructions* | pain | | | | | |
| Same | **NORVASC (AMLODIPINE BESYLATE)** | 10 Milligrams | by mouth | Take once daily | 04JUN2012 | | |

Patient/Appointed Personal Representative verbalizes/demonstrates understanding.

Patient/APR Signature: X _Adedeji J Omol_  Date _6/4/12_

Nurse Signature: _____  Date _6/4/12_

Electronically Signed by Provider: **ABASSI, LILA  (MD)   4Jun2012 12:39:18**